# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **CHARLES STEINES,** a Minor, by his Parents and Natural Guardians, **ANN MUNSON STEINES** and **MICHAEL STEINES,** | : : : : | Case No. 1:14-cv-525 <br><br> Judge Dlott |
| Plaintiffs, | : : | |
| vs. <br><br> **OHIO HIGH SCHOOL ATHLETIC ASSOCIATION,** | : : : : : | **PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND MEMORANDUM IN SUPPORT** |
| Defendant. | : | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Charles Steines, a Minor, and his Parents and Natural Guardians Ann Munson Steines and Michael Steines respectfully move the Court to issue a Temporary Restraining Order and Preliminary Injunction declaring Defendant Ohio High School Athletic Association's ("OHSAA") Bylaws, which prohibit Charles Steines from participating in athletics at The Summit Country Day School ("Summit") in Cincinnati, Ohio, discriminatory as they apply to Charles Steines, a disabled Minor.  Plaintiffs further request that this Court issue a Temporary Restraining Order, and Preliminary and Permanent Injunction ordering Defendant to accommodate Charles Steines by allowing him to play sports at Summit.  Accompanying this Motion is a Memorandum in Support.

Respectfully submitted,

/s/ *Randolph H. Freking*
Randolph H. Freking (0009158)
John P. Concannon (0024131)
Katherine Daughtrey Neff (0082245)
Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, Sixth Floor
Cincinnati, OH 45202
PH: 513-721-1975/FAX: 513-651-2570
*randy@frekingandbetz.com*
*jconcannon@frekingandbetz.com*
*kneff@frekingandbetz.com*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

OHSAA's Bylaws prohibit students residing outside of Ohio from participating in high school athletics unless the students fall into one of ten exceptions.  None of those exceptions apply to students who attend the Springer School and Center ("Springer"), which is a school exclusively for students with learning disabilities.  As such, OHSAA's Bylaws have a disparate impact on students with learning disabilities.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Ann and Mike Steines are residents of Villa Hills, KY.  They had their son Charles tested for learning disabilities after they noticed that he often came home from Kindergarten exhausted and unhappy.  (Verified Complaint ¶ 5.)  Charles Steines was diagnosed with learning disabilities including Attention Deficit Hyperactivity Disorder ("ADHD") and an auditory processing issue in February of 2005.  (Verified Compl. ¶ 5.)  Upon his diagnosis, Ann and Mike Steines learned of Springer in Cincinnati, Ohio.  (Verified Compl. ¶ 6.)  Springer is one of less than two dozen schools nationwide that offers an education for grades one through eight exclusively to children with learning disabilities.  It has approximately 200 students from Ohio, Kentucky and Indiana.  (Verified Compl. ¶ 7.)  Ann and Mike Steines thereafter enrolled their son Charles at Springer for the 2005/2006 school year.  (Verified Compl. ¶ 8.)

Each December, through Parent/Teacher conferences, Springer makes recommendations as to whether the student should continue at Springer the next school year.   (Verified Compl. ¶ 9.) For five years, Charles' teachers recommended that he continue his education at Springer. (Verified Compl. ¶ 10.)  However, during his sixth year, the teachers and staff informed Ann and Mike Steines that Charles could leave Springer if, and only if, they could find a school that could offer him the significant support that he needed to succeed.   (Verified Compl. ¶ 11.)

After a diligent search of schools in both Kentucky and Ohio, the Steines selected St. Ursula Villa in Cincinnati because of its small class sizes and extremely engaged teachers. Further, St. Ursula Villa had one period each day, called Communication Arts, which was supervised by a Learning Intervention Specialist and devoted to reviewing challenging material, organizing homework and preparing for tests. St. Ursula Villa also allowed for the use of a laptop during class (something that served Charles well in sixth grade at Springer). Finally, St. Ursula Villa had a strong reputation for academics. (Verified Compl. ¶ 12.) Charles Steines enrolled at and attended St. Ursula Villa for the seventh and eighth grade. His teachers and professional learning support staff at St. Ursula Villa strongly recommended that Charles look for a similar environment for his high school education. (Verified Compl. ¶ 13.)

Ann and Mike Steines again conducted a thorough review of high schools in both Kentucky and Ohio. Their review revealed that the high school most similar to St. Ursula Villa was Summit. Summit has small class sizes, a resource program similar to the Communication Arts program at St. Ursula Villa, a technology platform that permitted and supported the use of laptops and electronic notebooks and a strong reputation for academics. Finally, Summit offers a college guidance program that is considered among the best in Cincinnati - a key benefit for a student with learning disabilities. (Verified Compl. ¶ 14.)

Throughout Charles Steines' childhood, the ability to participate in sports made a positive impact on his social skills and self-image. Often learning disabilities negatively impact a child's social skills and self-image. Through his participation in sports, Charles has created opportunities to grow his self-confidence and ability to make friends. Further, playing sports has positively impacted Charles' behavior, attendance and academic performance. (Verified Compl. ¶ 15.) Although Archbishop Moeller and St. Xavier high schools also accepted Charles

Steines for high school admission and both schools have nationally recognized educational and athletic programs, the Steines chose Summit. (Verified Compl. ¶ 16.)

Defendant's Bylaws specifically prevent out of state residents from participating in high school sports unless the student meets at least one of the ten enumerated eligibility exceptions. Bylaw 4-6-3, Exception 3 provides that:

> A student who enrolls at the first grade level in a school consisting of 1-12 and who maintains continuous enrollment shall be eligible for inter scholastic athletics in grades 7-12 in that school regardless of place or state of residence of parents.

Bylaw 4-6-3, Exception 4 provides that:

> A student who resides within the boundaries of a parochial school system consisting of grades 1-12 that has multiple sites organized into elementary schools (1-8) and secondary schools (9-12), and who has enrolled by fourth grade level of an elementary school in that system and has maintained continuous enrollment in that school system through grade 8, shall be eligible for interscholastic athletics in grades 9-12 providing the secondary school attended by the student is the school designated by the school system for the continuance of the student's educational program.

(Verified Compl. ¶ 17.)

On February 10, 2014, Ann and Mike Steines reached out to Daniel B. Ross, Ph.D., Commissioner of OHSAA and requested an accommodation for Charles. (Verified Compl. ¶ 18.) Specifically, they informed Dr. Ross that by attending Springer, a school designed for children with learning disabilities, through grade six, the year Charles' teachers finally released him to attend another school, Charles was prevented by OHSAA's Bylaws to play sports in high school, even though he attended school in Ohio for grades one through eight, and planned to attend an Ohio high school. (Verified Compl. ¶ 19.) Defendant denied the request on February 24, 2014. (Verified Compl. ¶ 20.)

Following Defendant's denial, on March 7 and again on April 3, 2014 Ann and Mike Steines again requested that OHSAA provide Charles with an accommodation and allow him to

play sports as OHSAA's Bylaws subjected Charles (and others with learning disabilities who attend Springer) to a denial of the opportunity to participate in or benefit from the privileges or advantages offered by OHSAA to non-disabled students in March and again in April. (Verified Compl. ¶ 21.) However, Defendant again refused to accommodate Charles Steines. (Verified Compl. ¶ 22.)

Defendants Bylaws have the effect of discriminating against a class of individuals on the basis of disability in violation of the Americans with Disabilities Act. As a result of Defendant's unlawful failure to accommodate Charles Steines, Plaintiffs have suffered and continue to suffer irreparable, incalculable harm.

### III. ARGUMENT

#### A. Standard Of Review

When considering a motion for a Temporary Restraining Order, courts address the following factors: (1) whether the party seeking the order has shown a substantial likelihood of success; (2) whether the party seeking the order will suffer irreparable harm absent the injunction; (3) whether the order will cause others to suffer substantial harm; and whether the public interest would be served by injunctive relief. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), cert. denied, 519 U.S. 807, 117 S.Ct. 49 (1996) (No. 95-1674), 64 U.S.L.W. 3795 (U.S. May 17, 1996) (No. 95-1884); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988); *North Avondale Neighborhood Ass'n v. Cincinnati Metro. Hous. Auth.*, 464 F.2d 486, 488 (6th Cir. 1972); *Reynolds v. International Amateur Athletic Fed'n*, 841 F. Supp. 1444, 1454 (S.D. Ohio 1992); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Kramer*, 816 F. Supp. 1242, 1246 (N.D. Ohio, E.D. 1992). No single factor is dispositive; rather, the court should balance the

5

elements collectively. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985); *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Midmark Corp. v. Janak Healthcare Private, Ltd.*, 2014 U.S. Dist. LEXIS 52652 (S.D. Ohio Apr. 16, 2014).

### B. Plaintiffs Meet Each Factor

#### 1. Granting The Temporary Restraining Order Will Serve A Public Interest.

OHSAA's Bylaws provide enumerated exceptions to the Ohio residency requirement based on several considerations including, for example, enrolling in a school consisting of grades one through 12 at the first grade level and maintaining continuous enrollment. (*See* OHSAA Bylaw 4-6-3, Exceptions 1-10 which are attached as Exhibit A.) Springer, the only school designed for students with learning disabilities in Southern Ohio and the Tri-state region, only goes through an eighth grade level. Therefore, a Springer student would not be eligible to play sports in high school under this exception unless the student left the school before the fourth grade. Meanwhile, numerous exceptions are granted to non-Ohio residents who attend schools in Ohio for reasons unrelated to disabilities.

By granting a Temporary Restraining Order this Court would be serving the public interest of allowing a disabled student, who has continuously attended school in Ohio since the first grade, to participate in sports, which will undoubtedly have a positive impact on his social skills, self-confidence, academic performance and behavior. These results will positively impact the Summit students, the Summit teachers, and society as a whole.

#### 2. No Third Parties Will Be Harmed By The Restraining Order.

Just as the public interest will be served by allowing Charles Steines to play sports for Summit, no third parties will be harmed by this Court's decision to allow him to play. On the

contrary, Summit's students, parents, and athletic fans will benefit should Plaintiff Steines be allowed to play sports as he is a proficient athlete who loves sports.

        3.    <u>Plaintiffs Will Suffer Irreparable Injury If The Request For Relief Is Not Granted.</u>

As established by the Verified Complaint, Charles Steines' learning disabilities negatively impact his social skills and self-image. Through his love of sports and his natural athletic ability, his social skills and self-image have greatly improved by participating in team sports. By taking away his ability to participate in sports, Defendant is imposing an undue hardship on him. This undue hardship is further compounded by the fact that the OHSAA's Bylaws allow exceptions for students attending public or parochial schools, but do not include exceptions for students attending Springer. Defendant can only remedy this irreparable injury if this Court orders Defendant to accommodate Plaintiff and allow him to play sports. *See Washington, et al. v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 843, 853 (7th Cir. 1999) (affirming the district court's holding that "the loss of future playing opportunities and the loss of the desire to continue academically, are harms which cannot be repaired, for which Eric cannot be adequately compensated.")

        4.    Plaintiff Is Likely To Succeed On The Merits As OHSAA's Bylaws Deny Individuals With Disabilities An Opportunity To Participate In Athletics.

        (1)    OHSAA Is A Public Entity Subject To Title II Of The ADA.

It is well established that Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973, apply to state athletic associations. *See Sandison v. Michigan High Sch. Athletic Ass'n., Inc.*, 64 F.3d 1026 (6th Cir. 1995); *Rhodes v. Ohio High Sch. Athletic Ass'n*, 939 F. Supp 584 (N.D. Ohio 1996); *Ill. ex rel. Madigan v. Ill. High Sch. Ass'n*, 2012 U.S. Dist. LEXIS 116417 (N.D. Ill. Aug. 17, 2012). Title II of the ADA provides: "Subject to the

provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. Under § 504 of the Rehabilitation Act and Title II of the ADA, to prove a substantial likelihood of success, the plaintiff must show that: (1) he suffers from a disability; (2) he is "otherwise qualified" to participate in athletics, and (3) he is being excluded from playing sports by reason of his disability. *Washington v. Indiana High Sch. Ath. Ass'n*, 181 F.3d 840, 846 (7th Cir. 1999).

In *Washington*, the Seventh Circuit upheld the district court's grant of a preliminary injunction for a student whose learning disability resulted in his dropping out of school for a period of time until Central Catholic High School had him tested for learning disabilities and offered him the opportunity to attend their school. 181 F.3d 840, 842. Because he was out of school for a period of time, he was ineligible to play sports for Central Catholic High School pursuant to the Indiana High School Association's ("IHSAA") regulations. *Id*. The *Washington* Court first weighed whether Washington demonstrated a substantial likelihood of success and determined that he had. First, the Court rejected IHSAA's argument that Washington had to prove it intended to discriminate on the basis of disability. *Id*. at 846. Citing the Sixth Circuit's decision in *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc), the *Washington* Court held that neither Title II of the ADA nor § 504 of the Rehabilitation Act required a finding of an intent to discriminate and a disparate impact claim is permissible under both statutes. *Id*. at 847 n.10; *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1483-84 (9th Cir. 1996); *Norcross v. Sneed*, 755 F.2d 113, 117 n.4 (8th Cir. 1985); *Pushkin v.*

*Regents of the Univ. of Colorado*, 658 F.2d 1372, 1385 (10th Cir. 1981); *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 306 (5th Cir. 1981).

Again citing the Sixth Circuit's *McPherson* decision, the *Washington* Court provided the following options for proving a violation of Title II of the ADA or § 504 of the Rehabilitation Act: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Id*. at 847. Here, Plaintiffs have a substantial likelihood of success in proving OHSAA refused to provide a reasonable accommodation *and* its rule disproportionally impacts disabled people.

Mike and Ann Steines requested a reasonable modification to OHSAA's Bylaws to allow Charles to play sports for Summit and Defendant denied their request. In denying their request, Defendant did not claim that it would be unduly burdened to accommodate Charles, instead, Defendant simply cited to its Bylaws and pointed out that Charles' educational situation did not fall into one of the 10 exceptions. First, Charles Steines is a qualified individual, who meets all other eligibility requirements to play sports for Summit, except for the requirement that he attend one school from the fourth grade through eighth grade. For the modification requested by the Steines to be considered unreasonable, OHSAA must present some evidence that it would "be a fundamental alteration to the purpose of the [OHSAA] rule or would create undue financial and administrative burdens." *Id*. at 850; *see School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 n.17, 94 L. Ed. 2d 307, 107 S. Ct. 1123 (1987); *College v. Davis*, 442 U.S. 397, 412 (1979); *McPherson*, 119 F.3d at 461. OHSAA cannot meet this burden. Presumably, the purpose of OHSAA's Bylaws relating to out-of-state students playing high school sports is to protect

9

amateurism in sports and to prevent schools from competing to bring students in from other states solely for their athletic abilities. Charles Steines has attended schools in Ohio since the first grade. He is not attending Summit because of his ability to play sports; instead, he is attending Summit because it provides the best opportunity for him to succeed with his learning disabilities. Had he intended to go to a school just for sports, he would have chosen Moeller or St. Xavier, schools nationally recognized for their athletics.

According to the *Washington* Court, to prove causation, a plaintiff must demonstrate that "but for his learning disability, he would have been eligible to play sports." *Id*. at 849. But for Charles Steines' learning disabilities, he would have been eligible to play sports for any high school he chose to attend. He would not have had to attend Springer and could have remained in Kentucky, like his sister, and attended a school there. In the alternative, but for Charles Steines learning disabilities, he could have attended St. Ursula Villa or Summit beginning in the first or second or third or fourth grade and therefore been able to meet the technical residency requirements of the OHSAA.

Moreover, OHSAA's Bylaws have a disparate impact on students with learning disabilities because none of the exemptions for out-of-state students to play sports in high school apply to students who attend Springer, a school designed for students with learning disabilities. Springer's 200 member student body is made up of students from Ohio, Kentucky and Indiana. The students come from 66 zip codes from all over the Tri-state region. Approximately 15% of the students are non-residents of Ohio. Springer's classes encompass first through eighth grade; therefore any non-Ohio resident student who remains at Springer during those grades would be prohibited from playing sports in high school under OHSAA's Bylaws.

     (2)  OHSAA Is Subject To Title III Of The ADA.

If OHSAA asserts that it is not a public entity (despite the *Rhodes* court finding that it is) then it necessarily follows that OHSAA qualifies as a "private entity" for purposes of Title III of the ADA. See 42 U.S.C. § 12181 (6) (defining "private entity" for purposes of Title III as "any entity other than a public entity (as defined in section 12131(1))"). Title III of the ADA applies to private entities that own, operate, lease (or lease to) places of public accommodation. Such entities may not discriminate against any individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the place of public accommodation. 42 U.S.C. § 12182. Considering that OHSAA is an association that administers and operates interscholastic sports, meets and tournaments, and regulates eligibility for such events, OHSAA clearly meets, the definition of a "private entity" and therefore is subject to Title III's nondiscrimination mandate.

OHSAA operates places of accommodation including gymnasiums, arenas, courts, pools, tracks, stadiums, and other venues open to the public. Title III explicitly identifies such facilities as places of public accommodation. *See* 42 U.S.C. § 12181(7)(C), (D), (J), and (L). Numerous federal courts have found Title III applicable to athletic associations that are similar to OHSAA. *See Bowers v NCAA*, 9 F. Supp. 2d 460, 485-88 (D.N.J. 1998) (finding Title III coverage over the NCAA who deemed a student with learning disabilities academically ineligible for interscholastic athletics); *Tatum v. NCAA*, 992 F. Supp. 1114, 1121 (E.D. Mo. 1998) ("The significant degree of control that the NCAA exerts over the athletic facilities of its member institutions... support[s] plaintiff's argument that the NCAA is governed by Title III of the ADA."); *Ganden v. NCAA*, No. 96C-6953, 1996 US Dist LEXIS 17368, at *34 (N.D. Ill. Nov.

21, 1996) ("Parties may not escape the requirements of the ADA through multiple ownership or management of a facility. The NCAA is a private entity. Regardless of whether MSU owns or operates its swimming facilities, the NCAA may also 'operate' those facilities for purposes of Title III."); *Dennin v. Connecticut Interscholastic Athletic Conference*, 913 F. Supp. 663, 670 (D. Conn. 1996), vacated as moot, 94 F.3d 96 (2d Cir. 1996) (to "operate" means to "manage and control," thus by the CIAC managing and controlling interscholastic athletics in Connecticut in places of public accommodation, it was subject to Title III); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (operates "implies a requirement of control over the place providing services" subject to title III); *Howe v. Hull*, 873 F. Supp. 72, 77 (N.D. Ohio 1994) (operate means the person or entity "is in a position of authority" to make decisions that are allegedly discriminatory under Title III).

Under Title III, the ADA prohibits utilizing standards, criteria or methods of administration that have the effect of discriminating on the basis of disability. Further, 28 C.F.R. Part 36, § 36.301 provides that a private entity "(a) shall not impose or apply eligibility criteria that screen out or *tend to screen out an individual with a disability from fully and equally enjoying* any ...services, facilities, privileges, advantages or accommodations unless such criteria can be shown to be necessary for the provision of...services, privileges, advantages, or accommodations being offered." (Emphasis added). By providing a number of enumerated exceptions to the eligibility criteria for non-Ohio residents unrelated to disabilities but failing to similarly provide an exception for attending a school within Ohio that educates children with learning disabilities, OHSAA's Bylaws violate these provisions.

Although Defendant may have a legitimate interest in regulating out of state interscholastic athletic participation to prevent schools from "shopping" for star athletes to play on their teams, it does not follow that preventing out of state students who attend Springer from participating in athletics is accomplishing its interest. On the contrary, it is denying disabled athletes, who have committed to attend school in Ohio, from playing sports. There is simply no reasonable justification for this.

## IV.    CONCLUSION

For all the reasons stated herein, Plaintiffs request that this Court issue judgment declaring the OHSAA Bylaws, which prohibit Charles Steines from participating in athletics at Summit, discriminatory as they apply to Charles Steines, a disabled Minor. Plaintiffs further request that this Court issue a temporary restraining order, and preliminary and permanent injunction ordering Defendant to accommodate Charles Steines by allowing him to play sports at Summit as an eligible participant.

Respectfully submitted,

/s/ *Randolph H. Freking*
Randolph H. Freking (0009158)
John P. Concannon (0024131)
Katherine Daughtrey Neff (0082245)
Attorneys for Plaintiff
FREKING & BETZ, LLC
525 Vine Street, Sixth Floor
Cincinnati, OH 45202
PH: 513-721-1975/FAX: 513-651-2570
*randy@frekingandbetz.com*
*jconcannon@frekingandbetz.com*
*kneff@frekingandbetz.com*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's System.

/s/ *Randolph H. Freking*